Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| HÉCTOR RODRÍGUEZ BLÁZQUEZ<br><br>*Apelante*<br><br>v.<br><br>JUAN M. COLÓN RIVERA Y OTROS<br><br>*Apelado* | TA2025AP00174 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2021CV00119<br><br>Sobre: Persecución Maliciosa |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de septiembre de 2025.

El 28 de julio de 2025, el Sr. Héctor Rodríguez Blázquez (señor Rodríguez Blázquez o apelante) presentó una *Apelación* en la que solicita que revoquemos la *Sentencia*[2] emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario), el 20 de mayo de 2025, notificada y archivada en autos ese mismo día. Mediante el referido dictamen, el TPI desestimó con perjuicio la *Demanda*[3] sobre persecución maliciosa, difamación y daños y perjuicios incoada e impuso al apelante honorarios de abogados por temeridad.

Por los fundamentos que se exponen a continuación, **confirmamos** la Sentencia apelada.

---

[1] El recurso de epígrafe fue asignado a este Panel conforme a lo dispuesto en la Orden Administrativa OAJP-2021-086, emitida el 4 de noviembre de 2021, con efectividad del 10 de enero de 2022. Véase, además, la Orden Administrativa OATA-2023-221.

[2] Apéndice del apelante, entrada 299 en SUMAC.

[3] Apéndice del apelante, entrada 1 en SUMAC.

**I.**

El asunto ante nosotros es secuela de varias intervenciones previas en múltiples casos presentados, algunos de ellos identificados con el alfanumérico KLCE202301415 y KLCE202401249, entre otros.

El 29 de enero de 2021, el señor Rodríguez Blázquez presentó una *Demanda* sobre daños y perjuicios por persecución maliciosa y difamación en contra del Sr. Roberto Vázquez Ramos, su esposa, la Sra. Irma Rivera Ramos y la Sociedad Legal de Gananciales compuesta por ambos; del Sr. Juan M. Colón Rivera, su esposa, la Sra. Nydia E. Irizarry Martínez y la Sociedad Legal de Gananciales compuesta por ambos; del Sr. Javier Colón Irizarry y Advanced Urology Group, LLC; del Sr. Luis Muñiz Colón; West Urology Group, PSC; y Caribbean Urocentre, CSP (en conjunto, "los apelados").

En esencia, el señor Rodríguez Blázquez esbozó que los recurridos presentaron una *Demanda* en su contra en la Corte Federal para el Distrito de Puerto Rico por prácticas monopolísticas con alegaciones falsas de que rindió servicios médicos inferiores; y, a su vez, que acudieron a medios de comunicación para repetir los supuestos alegatos infundados. Como consecuencia, solicitó una indemnización de dos (2) partidas de no menos de quinientos mil dólares ($500,000.00) cada una por los daños resultantes de la persecución maliciosa y por la difamación, respectivamente.

Entre el 19 y 27 de abril de 2021, los apelados presentaron sus *Contestaciones a la Demanda*[4]. En síntesis, negaron todas las alegaciones que obran en la demanda y expusieron como defensa que no han instado procedimientos legales frívolos con el propósito de perseguir maliciosamente y no han presentado querellas en contra del señor Rodríguez Blázquez ante la Comisión de Salud del

---

[4] Apéndice del apelante, entradas 26 y 30 en SUMAC.

Senado, la Junta de Licenciamiento y Disciplina Médica de Puerto Rico, ni ninguna otra entidad reguladora de la profesión médica en Puerto Rico. Además, indicaron que no han publicado en las redes sociales y/o los medios de comunicación del país, información falsa, o de cualquier otra índole, ni expresiones públicas sobre lo alegado en la demanda en el Tribunal Federal sobre el señor Rodríguez Blázquez.

Luego de innumerables incidentes procesales, el 31 de enero de 2024, fue llevada a cabo la *Conferencia con Antelación a Juicio*[5]. En esta, discutieron el *Informe de Conferencia con Antelación al Juicio*, el cual fue presentado por las partes el 25 de enero de 2024. A su vez, el foro primario indicó que el descubrimiento de prueba había finalizado, y estaban pendiente de la determinación del Tribunal de Apelaciones para celebrar el juicio en su fondo[6].

Asimismo, luego de varias incidencias procesales, el 25 de junio de 2024, notificada el 27 de junio de 2024, el foro recurrido emitió *Orden Instrucciones para Juicio en su Fondo de Manera Presencial*[7]. En esta, dispuso que el juicio en su fondo sería celebrado los días 23 y 24 de octubre de 2024. Posteriormente, el TPI reséñalo el juicio para el 22 de noviembre de 2024.

El 12 de noviembre de 2024, el señor Rodríguez Blázquez radicó una moción titulada "*Moción de Desistimiento Voluntario con Perjuicio*[8]". No obstante, los apelados se opusieron mediante "*Moción en Oposición a Solicitud de Desistimiento, por no cumplir con la Regla 39.1 (B) de Procedimiento Civil*[9]". La vista en su fondo fue pospuesta pero ese día se argumentaron las antedichas mociones. Así las cosas, el 4 de diciembre de 2024, la parte apelante presentó "*Escrito Informativo*" en el cual informó haber remitido una "oferta de

---

[5] Apéndice del apelante, entrada 200 en SUMAC.
[6] Apéndice del apelante, entrada 203 en SUMAC.
[7] Apéndice del apelante, entrada 218 en SUMAC.
[8] Apéndice del apelante, entrada 247 en SUMAC.
[9] Apéndice del apelante, entrada 253 en SUMAC.

transacción" a la parte apelada. ~~Seguidamente~~, el 5 de diciembre de 2024, se presentó "*Escrito Informando el Retiro de Moción de Desistimiento Voluntario con Perjuicio*"[10].

El 19 de diciembre de 2024, el apelante presentó escrito intitulado "*Moción Solicitando se Ordene Citación de Testigos*"[11], donde solicitó que se citara a los apelados como testigos del apelante. El 20 de diciembre de 2024, notificada el 2 de enero de 2025, el TPI emitió "*Resolución Interlocutoria*"[12] en la que determinó lo siguiente:

> Se toma conocimiento de lo informado.
>
> Los señores LUIS MUÑIZ COLON, JUAN M. COLON RIVERA, JAVIER COLON IRIZARRY y ROBERTO VAZQUEZ RAMOS son la codemandados y anunciados como testigos de la parte codemandada cada uno de ellos, según discutido en la Conferencia con Antelación a Juicio, estando citados para el juicio en su fondo. La parte demandante no los anunció como testigos, solo podrá utilizarlos conforme a las Reglas de Procedimiento Civil y Reglas de Evidencia.

Finalmente, el juicio en su fondo se celebró el 8 y 10 de enero de 2025.

El TPI emitió las siguientes determinaciones de hechos que surgen del Informe de *Conferencia con Antelación a juicio:*

> 1. El Dr. Rodríguez Blázquez es doctor autorizado a practicar la medicina desde el 1986, con especialidad en cirugía y urología desde el 1991.
>
> 2. Las oficinas del Dr. Rodríguez están ubicadas en la calle José de Diego, Mayagüez, Puerto Rico.
>
> 3. Roberto Vázquez Ramos, Javier Colón Irizarry, Luis Muñiz Colón y Juan Colón Rivera son doctores con la especialidad de urología.
>
> 4. Roberto Vázquez Ramos, Javier Colón Irizarry, Luis Muñiz Colón y Juan Colón Rivera practican su profesión en el área oeste de Puerto Rico.
>
> 5. El 30 de mayo de 2019, los demandados presentaron contra Triple-S Salud, Inc., MSO of Puerto Rico y el Dr. Rodríguez y sus corporaciones de nombre Urologics, LLC y Urologists, LLC una demanda en el Tribunal Federal bajo las

---

[10] Apéndice del apelante, entrada 270 en SUMAC.
[11] Apéndice del apelante, entrada 278 en SUMAC
[12] Apéndice del apelante, entrada 280 en SUMAC.

leyes de monopolios. La demanda en el Tribunal Federal lleva el número Civil 2019-01527.

6. El 15 de diciembre de 2020, mediante Resolución y Orden el Tribunal Federal desestimó la Demanda.

7. Los aquí demandados acudieron ante el Tribunal de Apelaciones para el Primer Circuito de Boston.

8. El Primer Circuito confirmó en parte la desestimación de la Demanda Federal y devolvió el caso al Distrito Federal de Puerto Rico para que se hiciera descubrimiento de prueba en cuanto a ciertas alegaciones especificas relacionadas a Triple-S Salud, Inc.

Luego de evaluada y escuchada la prueba testifical y documental presentada por las partes en el juicio, el Foro apelado formuló las siguientes Determinaciones de Hechos:

9. El demandante es Héctor Manuel Rodríguez Blázquez mayor de edad, médico en especialidad de urología, residente en Mayagüez, Puerto Rico. Curso sus grados primarios en el Colegio San Benito de Mayagüez y su grado universitario en biología en la Universidad de Puerto Rico Recinto de Mayagüez. Estudio medicina en el Recinto de Ciencias Médicas, Universidad de Puerto Rico obteniendo su grado en 1986, y luego curso su especialidad en urología obteniendo su grado en 1991.

10. Comenzó su práctica de medicina en especialidad en urología en el año 1991 hasta el presente en la ciudad de Mayagüez manejando una población de pacientes menores y adultos.

11. El demandante ha tenido privilegios médicos en Hospital La Concepción en San Germán, Hospital Perea y Centro Médico de Mayagüez.

12. El demandante declaró conocer a los demandados.

13. El demandante declaró haber recibido una demanda presentada por los codemandados, Roberto Vázquez-Ramos, Irma Luz Rivera-Ramos y Sociedad de Bienes Gananciales compuesta por ambos; Javier E. Colón-Irizarry, Advanced Urology Group, LLC, Luis Manuel Muñiz-Colón, West Urology Group, PSC., Juan M. Colón-Rivera, Caribbean Urocentre, CSP., en el Foro Federal el 1 de octubre de 2019 mediante Caso Número 19-cv-01527.

14. El demandante declaró que realizó propuestas a Triple S para competir para los servicios que ofrece a través del plan médico, junto a varios urólogos.

15. El demandante declaró que Triple S canceló todas las contrataciones de los urólogos para el año 2015.

16. El demandante declaró que no tuvo que ver con las cancelaciones de Triple S con los demás servicios médicos de otros urólogos.

17. El demandante declaró sobre las alegaciones en la demanda federal sobre imputaciones de castraciones a pacientes aumentaron y sus ingresos disminuyeron.

18. El demandante declaró que son falsas las alegaciones de la demanda federal.

19. El demandante declaró que observó sobre los hechos alegados de castración en los medios de comunicación radio, prensa, televisión, agencias reguladoras e investigativas de la práctica de la medicina, luego de radicarse a la demanda de epígrafe.

20. El demandante presentó documento marcado como Identificación 1 "Orden Administrativa Caso Núm. QJLDM 2019-148; IN RE: Dr. Héctor Rodríguez Blázquez".

21. El demandante declaró que se le notificó sobre haber comenzó una investigación por la Junta de Licenciamiento y Disciplina Médica de Puerto Rico por advenir en conocimiento sobre una publicación de noticia en periódico electrónico en relación con castraciones con el fin de tratamientos de cáncer en la próstata.

22. El demandante declaró que se sintió mal, deshonrado, atacado en su profesión cuando recibió la notificación.

23. El demandante declaró que la notificación de la demanda federal versus la notificación de la orden administrativa transcurrió trece días.

24. El demandante declaró que la investigación por la Junta de Licenciamiento y Disciplina Médica de Puerto Rico se desestimó.

25. El demandante presentó documento marcado como Identificación 4 "Resolución del Senado 1155".

26. El demandante declaró que se sintió peor, perseguido, difamado, deshonrado, e indicó que todo lo expuesto es falso.

27. El demandante declaró que recibió el documento luego de publicado.

28. El demandante solicitó su admisibilidad conforme a la Regla 901 (B) (1) y Regla 805 (H) de Evidencia.

29. La parte demandada se opuso a ser admitido en evidencia Identificación 4 "Resolución del Senado 1155".

30. Evaluado la Identificación 4 "Resolución del Senado 1155" por el Tribunal determina que, no cumple con las Reglas de Evidencia sobre su admisibilidad ya que el documento no contiene sello oficial del Senado de Puerto Rico, certificación o firma alguna que acredite su confiabilidad. Se desprende de la Identificación #4 del demandante no contiene ninguna firma, sello o apostilla que

acredite que es copia fiel y exacta del documento original y no brinda las garantías de confiabilidad. No se admite documento en evidencia.

31. El demandante presentó documento marcado como Identificación #3 "Notificación de Investigación 2019-OPP-005".

32. Se marcó sin objeción de la parte demandada como Exhibit #2 "Notificación de Investigación 2019-OPP-005 del 22 de julio de 2019" de la parte demandante.

33. El demandante declaró que se sintió peor que en las ocasiones anteriores, por que atentaron contra su persona por diferentes investigaciones de agencias reguladoras, atentan contra los pacientes y su licencia médica, teniendo consecuencias contra el sustento familiar.

34. El demandante declaró que se sintió avergonzado, humillado por que los hechos son frívolos y falsos.

35. La investigación surgió mediante conocimiento de una demanda en el foro federal contra Triple S y Urologies LLC., sobre varios pacientes fueron sometidos a castraciones con el fin de tratarlos para el cáncer en la próstata sin proveerles otras opciones y prácticas monopolísticas.

36. El demandante declaró que observó esas alegaciones en la demanda federal.

37. El demandante declaró que refirió a sus abogados para ser atendido.

38. El demandante presentó documento marcado como Identificación #17 "Notificación de Archivo de Investigación 2019-OPP-005".

39. Se marcó con objeción de la parte demandada como Exhibit #3 "Notificación de Archivo de Investigación 2019-OPP-005" de la parte demandante.

40. Surge del Exhibit #3 la siguiente determinación: "No obstante, aun cuando la determinación judicial de la acción que inicia esta investigación es de distinta naturaleza a la que rige una investigación ante este organismo administrativo, determinamos que de la investigación no surge que se afectó la seguridad o salud pública razón por la que no se justifica la concesión de un remedio."

41. El demandante declaró que se sintió complacido con la determinación de la Oficina del Procurador del Paciente.

42. El demandante declaró que junio 4 y junio 9 observó publicaciones en medios electrónicos sobre los hechos de la demanda.

43. El demandante presentó documento marcado como Identificación #2 "Noticia Noticel del 9 de junio de 2019" conforme a la Regla 801 (C) y 902 (G) de Evidencia.

44. La parte demandada se opuso a ser admitido en evidencia conforme a la Regla 902 (L) de Evidencia.

45. Evaluado la Identificación #2 "Noticia Noticel del 9 de junio de 2019" por el Tribunal determina que, ésta no cumple con las Reglas de Evidencia sobre su admisibilidad ya que documento contiene tachaduras en el contenido, adolece los requisitos conforme a la Regla 902 (L).36 No se admite la Identificación #2 "Noticia Noticel del 9 de junio de 2019" por la parte demandante.

46. El demandante presentó documento marcado como Identificación #8 "Noticia Noticel del 4 de junio de 2019".

47. El demandante declaró que observó el documento en medios electrónicos y le fue enviado por email.

48. El demandante presentó documento marcado como Identificación #8 "Noticia Noticel del 4 de junio de 2019" conforme a la Regla 801 (C), Regla 902 (G) y Regla 901 (B) (1) de Evidencia.

49. La parte demandada se opuso a ser admitido en evidencia conforme a la Regla 902 (L) de Evidencia.

50. Evaluado la Identificación #8 "Noticia Noticel del 4 de junio de 2019" por el Tribunal determina que, ésta no cumple con las Reglas de Evidencia sobre su admisibilidad ya que documento contiene tachaduras en el contenido, fotografías que bloquean y alteran la información del documento adolece los requisitos conforme a la Regla 902 (L). No se admite la Identificación #8 "Noticia Noticel del 4 de junio de 2019" por la parte demandante.

51. El demandante presentó documento marcado como Identificación #9 "Noticia de Isla Oeste" conforme a la Regla 801 (C), Regla 902 (G) y Regla 901 (B) (1) de Evidencia.

52. El demandante declaró que reconoce el documento por que llegó a sus manos, impreso y entregado en las oficinas de sus abogados subsiguiente a que se publicó el artículo.

53. La parte demandada se opuso a ser admitido en evidencia conforme a la Regla 902 (L) de Evidencia, no se ofrecieron garantías de confiabilidad y no cumple con los requisitos de la Regla de Evidencia.

54. Evaluado la Identificación #9 "Noticia de Isla Oeste" por el Tribunal determina que, ésta no cumple con las Reglas de Evidencia sobre su admisibilidad ya quedocumento adolece los requisitos conforme a la Regla 902 (L). No se admite la Identificación #9 "Noticia de Isla Oeste" por la parte demandante.

55. El demandante presentó documento marcado como Identificación #10 "Noticia de Noticias 360 de 8 de diciembre de 2019" conforme a la Regla 801 (C), Regla 902 (G) y Regla 901 (B) (1) de Evidencia.

56. El demandante declaró que reconoce el documento por que llegó a sus manos y entregado en las oficinas de sus abogados subsiguiente a que se publicó el artículo.

57. La parte demandada se opuso a ser admitido en evidencia conforme a la Regla 902 (L) de Evidencia, ya que no ofreció información quien se lo entregó ni le consta que lo encontró en medio electrónico.

58. Evaluado la Identificación #10 "Noticia de Noticias 360 de 8 de diciembre de 2019" por el Tribunal determina que, ésta no cumple con las Reglas de Evidencia sobre su admisibilidad ya que documento adolece los requisitos conforme a la Regla 902 (L). No se admite la Identificación #10 "Noticia de Noticias 360 de 8 de diciembre de 2019" por la parte demandante.

59. El demandante presentó documento marcado como Identificación #19 (a) "Video titulado Comay 1" solicitando sea admitido conforme a la Regla 901 (B)(1) y Regla 901 (B)(7).

60. El demandante declaró que reconoce la Identificación #19 (a) porque es un video que presenció, no recordó la fecha, pero fue en el año 2019.

61. El demandante declaró que vio el video en un canal de Puerto Rico, Programa La Comay.

62. El demandante declaró que el video tiene relación con él por que aparece una foto de su persona.

63. El demandante no declaró quien, cuando o como se tomó o grabó el video, Identificación #19 (a).

64. La parte demandada se opuso a la Identificación #19 (a) ser admitido en evidencia conforme a la Regla 901 (13) 37 de Evidencia y Regla 902 (L) de Evidencia.

65. Evaluado la Identificación #19 (a) 38 "Video titulado Comay 1" por el Tribunal determina que, éste no cumple con las Reglas de Evidencia sobre su admisibilidad ya que documento adolece los requisitos conforme a la Regla 901 (13), no se presentó evidencia sustente la integridad como se obtuvo los datos grabados o almacenados y su contenido; no proveyeron declaración jurada conforme a la Regla 902 (L) de Evidencia; no se proveyó el video completo del programa en su totalidad, solo se presentó uno extractos del programa. No se admite la Identificación #19 (a) "Video titulado Comay 1" presentado por la parte demandante.

66. El demandante presentó las Identificaciones 19(a), 19 (b) y 19(c) como Oferta de Prueba.

67. El demandante declaró que una Institución Hospitalaria, Mayagüez Medical Center, alegó en su contra se negaba a ver sus pacientes hospitalizados y en sala de emergencia; que emitía ordenes mediante llamada telefónica; enviaba a examinar sus pacientes que no eran médicos; ordenaba dar de alta sin justificación; se negaba a contestar consultas

médicas; se negaba a brindar asistencia en operaciones a médicos que se lo solicitaban relacionados a su especialidad y no asistía a las reuniones del hospital.

68. El demandante declaró que son alegaciones falsas por que el cumplía con todo lo solicitado por la Institución Hospitalaria.

69. El demandante declaró que a su juicio los codemandados son los responsables de la demanda federal e investigaciones realizadas por las agencias gubernamentales.

70. El demandante declaró que son responsables por que nunca se le había cuestionado su integridad como en 40 años, ni el manejo de pacientes hasta luego que conocen sobre la demanda federal en su contra.

71. El demandante declaró que profesionalmente ha tenido perdida de contratos, de reinventarse para poder continuar su profesión y ha tenido pérdida de ingresos.

72. El demandante declaró que en su ámbito personal le ha afectado emocionalmente, porque fue perseguido por las agencias reguladoras, y los medios de comunicación han publicado información falsa teniendo como consecuencia sentirse ansioso y deshonrado con mi familia y con sus pacientes causándole angustias mentales.

73. En el contrainterrogatorio el demandante declaró que las alegaciones en la demanda federal fueron realizadas por la Institución Hospitalarias, Mayagüez Medical Center, y no es parte demandada en el caso de epígrafe.

74. El demandante declaró que tenía conocimiento sobre las imputaciones realizadas por MMC antes de la radicación de la demanda federal.

75. El demandante declaró que no demandó por difamación a Mayagüez Medical Center por las imputaciones que realizaron en su contra aun cuando declaró que eran imputaciones falsas.

76. El demandante declaró que no existe carta o documento alguno suscrito por los demandados haciendo imputaciones en su contra.

77. El demandante declaró que ha llevado reclamos validos ante los tribunales estatales.

78. El demandante declaró que una de las motivaciones para la radicación de la demanda de epígrafe fue por haber sido demandado en los tribunales federales.

79. El demandante declaró que las alegaciones de la demanda federal son falsas y se encuentran pendiente de adjudicación por el Tribunal Federal por que no se visto el juicio en su fondo.

80. El demandante declaró que no hay una sentencia final en el Tribunal Federal por que no ha concluido.

81. El demandante alegó en la demanda lo siguiente: "Contemporáneo con la presentación de la Demanda en el Tribunal Federal, los aquí demandados recurrieron a los medios de comunicación, incluyendo las redes sociales, haciendo públicamente fuera del foro judicial las imputaciones que se hacen en la Demanda en el Tribunal Federal, quedando desprovistas dichas expresiones de protección alguna."

82. El demandante declaró NO SABER si alguna de las partes demandada remitió algún documento relacionado a las alegaciones imputadas en la demanda.

83. El demandante declaró y reafirmó que ninguno de los demandados es mencionado en el documento marcado como Exhibit #141 de la parte demandante.

84. El demandante declaró y reafirmó que ninguno de los demandados es mencionado en el documento marcado como Exhibit #242 de la parte demandante.

85. El demandante declaró y afirmó que fue notificado al Lcdo. Alcover Acosta el Exhibit #3 de la Parte Demandante únicamente.

Así pues, el TPI no le otorgó credibilidad al testimonio del señor Rodríguez Blázquez. Además, razonó que, *de acuerdo con la jurisprudencia establecida por el Tribunal Supremo, los elementos para que prospere una demanda por persecución maliciosa son los siguientes: (1) que el demandado haya instigado un proceso civil o criminal contra el demandante; (2) que la causa haya terminado a favor del demandante; (3) que el proceso haya sido seguido maliciosamente, sin causa probable; (4) que el demandante haya sufrido daños; y (5) que exista una relación causal entre los actos y el daño sufrido*[13]. En fin, concluyó que no cumplió con los criterios jurisprudenciales. Tampoco logró establecer una acción torticera por libelo, difamación y calumnia. Esbozó que el apelante tenía que demostrar que la información publicada era falsa y que, por causa de su publicación, sufrió daños reales, y debía probar que la imputación fue hecha negligentemente. Surge del testimonio y prueba del demandante, que no estableció ninguno de los elementos para que se configurara la causa acción. De igual forma, concluyó

---

[13] Apéndice del apelante, entrada 299 en SUMAC.

que el señor Rodríguez Blázquez no probó ni estableció que los demandados realizaron expresiones en los medios de comunicación, periódico general o electrónicos, programación televisiva y otros. En consecuencia, el TPI desestimó con perjuicio la demanda. Además, concluyó que el señor Rodríguez Blázquez presentó las causas de acción antes mencionadas, conociendo que no tenía ápice de prueba contra los demandados, al no establecerlo en el juicio. Por lo cual, determinó que el apelante incurrió en temeridad y, en consecuencia, le impuso la suma de ocho mil dólares ($8,000.00) por concepto de honorarios de abogado. El 30 de mayo de 2025, los apelados presentaron un *Memorando de Costas*[14]. El 4 de junio de 2025, el apelante presentó una *Oposición al Memorando de Costas*[15]. El 21 de julio de 2025 y notificada el 22 de julio del mismo año, el TPI emitió una *Resolución* mediante la cual concedió cinco mil seiscientos cincuenta y cinco dólares con cuarenta y seis centavos ($5,655.46) en costas.

El apelante solicitó *Reconsideración*[16], la cual fue declarada No Ha Lugar. Aun inconforme, el apelante presentó la apelación de epígrafe, mediante la cual sostuvo que el foro primario cometió los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL IMPONER HONORARIOS DE ABOGADO EN CONTRA DEL APELANTE.
>
> **SEGUNDO ERROR**: ERRÓ EL TPI AL CONCEDER LAS COSTAS DE LOS TRÁMITES APELATIVOS ANTE ESTE FORO Y EL TRIBUNAL SUPREMO, A PESAR DE LOS APELADOS NO SOLICITARON DICHAS COSTAS DENTRO DEL TÉRMINO JURISDICCIONAL ESTABLECIDO EN LA REGLA 44.1(C) DE PROCEDIMIENO CIVIL Y AL CONCEDER COSTAS RELACIONADAS A GASTOS DE OFICINA.

Atendido el recurso, el 20 de agosto de 2025, emitimos *Resolución* concediéndole a los apelados un término para presentar

---

[14] Apéndice del apelante, entradas 300-301 en SUMAC.
[15] Apéndice del apelante, entrada 318 en SUMAC.
[16] Apéndice del apelante, entrada 303 en SUMAC.

su postura en cuanto la apelación. Oportunamente, los apelados presentaron su *Oposición.*

Con el beneficio de la comparecencia de todas las partes, estamos en posición de adjudicar.

## II.

En nuestro ordenamiento jurídico, la concesión de costas en el litigio está gobernada por la Regla 44.1 de las de Procedimiento Civil[17]. En lo pertinente, ésta dispone que "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión [...]"[18]. De acuerdo con la norma procesal, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra"[19].

La Regla también establece el procedimiento que se debe seguir para conceder las costas. En particular, el inciso (b) dispone que la parte reclamante tiene el término de diez (10) días, contados a partir de la notificación de la sentencia que le favorece, para presentar al tribunal, y notificar a la parte contraria, un memorando de costas[20]. El referido término de diez (10) días es de naturaleza jurisdiccional, tanto para presentar el memorando de costas como para notificar el mismo[21]. La naturaleza jurisdiccional del término para presentar y notificar un memorando de costas surge en virtud de la Regla 68.2 de Procedimiento Civil[22]. Por lo cual, este plazo es

---

[17] 32 LPRA Ap. V., R. 44.1.
[18] 32 LPRA Ap. V., R. 44.1.
[19] *Íd.*
[20] Regla 44.1(b) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1.
[21] *Rosario Domínguez v. ELA*, 198 DPR 197 (2017); *Comisionado v. Presidenta*, 166 DPR 513, 518 (2005).
[22] 32 LPRA Ap. V., R. 68.2.

improrrogable y su cumplimiento tardío priva al tribunal de autoridad para considerar y aprobar las costas reclamadas[23].

Por último, la Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Aunque el concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil, se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia[24].

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes[25]. La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, depende de que el tribunal haga una determinación de temeridad.

Por último, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador"[26]. El tribunal impondrá la cuantía que el juzgador entienda que corresponde a la conducta temeraria[27]. Los criterios a evaluar al determinar si una parte litigante incurrió en temeridad son: (1) el grado de temeridad desplegada durante el litigio; (2) la naturaleza del procedimiento judicial; (3) los esfuerzos y la actividad profesional ejercida en el litigio; (4) la habilidad y reputación de los abogados[28].

---

[23] *Rosario Domínguez v. ELA, supra.*
[24] *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713 (1987).
[25] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999).
[26] *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983).
[27] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 519-520 (2010).
[28] *Asociación de Condóminos v. Trelles Reyes,* 120 DPR 574, 579 (1988).

Cónsono con lo anterior, reconocemos que de ordinario el ejercicio de las facultades discrecionales por el foro de primera instancia merece nuestra deferencia. Como corolario de lo anterior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo[29].

**III.**

En primer lugar, procederemos a examinar los señalamientos de error en conjunto. A grandes rasgos, el apelante aduce que no procede el pago de las costas, puesto que los reclamos sobre comparecencia a este Foro y el Tribunal Supremo son tardíos y lo único que le corresponde solicitar es el pago por el sello de la primera comparecencia al TPI. Por otra parte, los apelados entienden que los gastos de sellos de correo, copias de los escritos y gestor para presentar los recursos son compensables y así lo establecen en los respectivos Memorandos de Costas[30].

El *Memorando de Costas* propuesto y guiándonos por los principios establecidos por nuestro ordenamiento jurídico en cuanto

---

[29] *Rivera Durán v. Banco Popular*, 152 DPR 140 (2000).

[30] (a) Sellos de primera comparecencia de los demandados al presentarse la demanda de epígrafe $90.00.

(b) Sellos y gastos de primera comparecencia en las Peticiones de *Certiorari* del demandante ante el Tribunal de Apelaciones de Puerto Rico.

| Núm. Caso | Sellos | Gastos |
|---|---|---|
| KLCE202300672 | $102.00 | Copias escrito y correo certificado = $138.00 |
| KLCE202301415 | $102.00 | Copias escrito y correo certificado = $220.00 |
| KLCE202301416 | $102.00 | Copias escrito y correo certificado = $248.00 |
| KLCE202401139 | $102.00 | Copias escrito y correo certificado = 185.00$ |
| KLCE202401249 | $102.00 | Copias escrito y correo certificado = $135.00 |
|  | $510.00 | $926.00 |
| Total |  | $1,436.00 |

(c) Sellos y gastos de primera comparecencia en las Peticiones de *Certiorari* del demandante ante el Tribunal Supremo de Puerto Rico.

| Núm. Caso | Sellos | Gastos |
|---|---|---|
| CC-2023-0513 | $102.00 | Copias escrito = $115.45<br>Envío por correo = $65.87<br>Gestor para radicar escrito TS = $200.00 |
| CC-2024-0113 | $102.00 | Copias escrito = $85.54<br>Envío por correo = $78.45<br>Gestor para radicar escrito TS = $200.00 |
| CC-2024-0114 | $102.00 | Copias escrito = $74.55<br>Envío por correo = $65.87<br>Gestor para radicar escrito TS = $200.00 |
|  | $306.00 | $1,085.73 |
| Total |  | $1,391.73 |

a la evaluación de la concesión de costas, fueron **necesarias, incurridas y razonables**[31].

En cuanto a la concesión de honorarios por temeridad, aduce que *el TPI indicó en la Sentencia que los honorarios de abogado proceden por éste no haber comparecido al primer señalamiento de juicio*[32]. *Es decir, por las mismas razones por las que ya el apelante pagó una sanción de dos mil dólares* ($2,000.00).

Según expusimos, el tribunal sentenciador debe ejercer su **discreción** al conceder las costas, al evaluar la razonabilidad de los gastos y al determinar la necesidad de estos[33]. De igual forma, el Tribunal goza de **discreción** para imponer honorarios de abogado por temeridad[34].

Evaluado el expediente en su totalidad, determinamos que el TPI evaluó los memorandos de costas presentados por los apelados, y ejerció su discreción al conceder y rechazar partidas. Del expediente no surge que el foro primario haya actuado con prejuicio, parcialidad o abuso de discreción al momento de conceder las referidas partidas.

Con relación a las partidas de honorarios, cabe señalar que el TPI realizó una determinación expresa de temeridad: *Surge de autos que, el señor Rodríguez Blázquez durante varios años continuó el proceso judicial contra los demandados conociendo no tener prueba para sostener sus alegaciones. Además, en varias ocasiones desafió al Tribunal al no comparecer al juicio, aun cuando se le brindó garantías de seguridad a él y a su familia en el proceso. Es menester concluir que la parte apelante incurrió en temeridad al sostener su postura contumaz e insistencia en una actitud desprovista de*

---

[31] Claro está, nuestro Máximo Foro también resolvió que son recobrables como costa los gastos incurridos por las copias de un escrito de apelación con sus respectivos legajos, *Sanchez v. Sylvania Lighting,* 167 DPR 247, 254 (2006).
[32] Véase *Apelación.*
[33] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 934 (2012).
[34] *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 192 (2022).

*fundamentos, obligando innecesariamente a la parte apelada a asumir las molestias, gastos, trabajo e inconveniencias al litigar este caso hasta las últimas consecuencias*[35]. *Colegimos que, el TPI* consideró varias situaciones que constituyó temeridad y, así, condenó al pago[36].

Toda vez que la facultad de imponer costas y honorarios de abogado por temeridad es discrecional, y no observamos que el TPI haya abusado de su discreción, no intervendremos con su apreciación. Por tanto, validamos su determinación y concluimos que los errores no fueron cometidos.

## IV.

Por los fundamentos antes expuestos, ***confirmamos*** la Sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[35] Apéndice del apelante, 299 en SUMAC.
[36] *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 40 (1962); *Rodríguez v. Alcover*, 78 DPR 822, 826 (1955); *Vélez v. Ríos*, 76 DPR 860, 868 (1954).